## McDONALD et al., Respondents, *v.* MONTANA WOOD COMPANY, Appellant.

[Submitted January 9, 1893.  Decided February 5, 1894.]

Mines and Mining—*Placer claim.*—It is not necessary that a separate discovery, separate marking of the boundaries, separate recording, and separate work should be made and performed upon each twenty acres contained in a one hundred and sixty acre placer claim, which, under section 2330 of the Revised Statutes of the United States, may be located by one person or an association of persons.

Same—*Forfeiture—Pleading.*—Forfeiture of a placer mining claim for failure to do annual representation will not be sustained when such forfeiture is not pleaded, and no evidence is disclosed by the record of a relocation by any one on account of such failure, or that defendant had acquired an adverse outstanding title.

Trespass—*Treble damages—Malice.*—Treble damages for the cutting of timber on plaintiff's land, and its conversion by defendant, are not recoverable under section 363 of the Code of Civil Procedure in an action for willful and malicious trespass, in the absence of proof of malice, wantonness, or evil design.

*Appeal from Fifth Judicial District, Jefferson County.*

Action for trespass.  The cause was tried before Galbraith, J.  Plaintiff had judgment below.  Modified.

*Cowan & Parker,* for Appellant.

I.  In the case at bar eight individuals, not united in interest, attempted to locate eight placer claims, while they had made discovery of gold upon but one of such claims, or, in other words, gold was found in but one place on the entire tract.  Seven of these claims are attempted to be held without any discovery having been made upon them, or either of them, and defendant is charged with having committed a trespass upon claims so situated.  No authority can be found in any of the law books which would sustain the location of eight placer claims by the discovery of placer deposits upon but one of them.  A placer claim consists of not more than twenty acres (U. S. Rev. Stats., § 2331; 15 Am. & Eng. Ency. of Law, p. 524), and is subject to same rules and conditions, relative to location and holding, which pertain to lode claims. (U. S. Rev. Stats., § 2329; 15 Am. & Eng. Ency. of Law, 551, and note 5; *Sweet* v. *Webber,* 7 Col. 443; *Carney* v. *Arizona Mfg. Co.,* 65 Cal. 40.)  Discovery and appropriation

are the sources of right. (15 Am. & Eng. Ency. of Law, 528, § 8.) Plaintiffs acquired no title or right of possession under such a discovery, hence their action must fail. And again, the appellant contends that no discovery was made within the general boundaries of the tract of land claimed, as the same was described in their notice of location, and as the same was marked upon the ground. Plaintiffs marked their eight claims upon the ground by the blazing of four trees, one at each of the four corners of said tract. Boundaries beyond the maximum extent of a legal location would not import notice, and would be equivalent to no boundaries at all. (15 Am. & Eng. Ency. of Law, 536, note; *Hauswirth* v. *Butcher,* 4 Mont. 299.) Placer claims, held in common, are each subject to annual representation. (*Chambers* v. *Harrington,* 111 U. S. 350.)

II. The evidence in this case discloses the facts: 1. That no member of the defendant corporation felled any of the trees or timber mentioned; 2. That such trees and timber were felled by divers men at work for themselves, and not in the employ of, nor under the direction of, defendant. The evidence will not, therefore, support the allegation of trespass; and in particular will not support the theory of a malicious trespass and treble damages. Exemplary damages cannot be recovered for a trespass not malicious in its character. (*Phelps* v. *Owens,* 11 Cal. 23; *Dorsey* v. *Manlove,* 14 Cal. 553; *Nightingale* v. *Scannell,* 18 Cal. 315; *Selden* v. *Cashman,* 20 Cal. 57; 81 Am. Dec. 93.)

*Thomas Joyes,* for Respondents.

I. Defendant denies the validity of plaintiffs' location, but does not attempt to show any right in itself to the land, or any right to cut timber thereon. This naked trespasser cannot be heard to dispute the right of possession of the plaintiffs. (*Weimer* v. *Lowery,* 11 Cal. 104.) The plaintiffs' location notice being properly made out, sworn to, and recorded as required by law, is *prima facie* evidence of what the law requires it to contain, where it is sufficiently set forth in the notice. (*Jantzen* v. *Arizona Copper Co.* (Ariz., Jan. 19, 1889), 20 Pac. Rep. 93; 15 Am. & Eng. Ency. of Law, 532.)

II.  It is only necessary that the claim should be identified with reasonable certainty, and whether or not the boundaries can be readily traced is a question of fact for the jury. (15 Am. & Eng. Ency. of Law, 534, notes.) In this case the jury found that there was a proper marking on the ground, discovery, and recording, and there is no evidence to the contrary.

III.  There can be no forfeiture until some other person has entered upon and relocated the claim; until that has been done, plaintiffs may at any time resume work and hold under their original location. The question as to performance of annual labor cannot therefore be raised in this case. (*Lakin* v. *Sierra Buttes Gold Min. Co.*, 25 Fed. Rep. 343; *Belk* v. *Meagher*, 104 U. S. 279.)

IV.  A placer claim may contain more than 20 acres. One person can only locate 20 acres in one claim, but a location may contain 160 acres for an association of eight persons. (U. S. Rev. Stats., §§ 2330, 2331.) Such tracts have been uniformly treated as one claim. The law has been so construed by the interior department in granting patents to placer claims.

V.  The cases cited by appellant as to the necessity of showing malice relate entirely to damages claimed for the seizure of personal property and have no bearing upon this statutory proceeding. We proceed under section 363, page 159, Compiled Laws of Montana, which contains no allusion to malice, but authorizes the recovery of treble damages where the trespass is committed "without lawful authority." However, in this case, malice was alleged and proved.

Pemberton, C. J.—On the twenty-third day of September, 1890, plaintiffs (being seven in number) and Thomas Joyes located the Landlock placer mining claim, a tract of ground in Jefferson county, which they estimated at the time contained 160 acres, but which afterwards, by a survey, was found to contain about 76 acres. Plaintiffs made but one discovery on the entire tract. They marked the boundaries by blazing a tree at each corner of the entire tract of ground, and designated each of said corners of the claim by writing with a pencil, on the respective blazed trees, the name of the claim, and the

corner each tree represented. They also marked a tree at the discovery shaft, and posted a notice on the claim. The notice contained the names of all the locators, and a description of the ground claimed. The tract of land so located was not in any way subdivided into 20 acre claims, and no other discoveries were made, or marking done on the ground, than as stated above. During the year 1891 plaintiffs did work and made improvements on the entire tract of land to the amount of about $150. The complaint, which was filed November 21, 1891, charged that in the month of December, 1890, and at divers times between that date and the commencement of this suit, the defendant knowingly, willfully, and maliciously entered upon said land without the consent of plaintiffs, and cut down and carried away a large amount of trees and timber growing thereon, etc., claiming actual damages in the sum of $3,000, and asking judgment for treble damages under section 363 of the Code of Civil Procedure. The answer denies the title of plaintiffs, and all the material allegations of the complaint. The case was tried by the court with a jury. The jury returned a verdict for plaintiff in the sum of $549.63, as actual damages, which they trebled, making the sum of $1,648.49, for which sum judgment was rendered. Defendant moved for new trial. This motion was overruled. The defendant appealed from the judgment, and the order refusing a new trial.

The appellant contends that the location of the mining claim in the manner as above described is a nullity, and conferred upon plaintiffs no right or title to the Landlock placer mining claim, or to the right of possession thereof. The appellant claims that, under the law, the plaintiffs should have made a discovery on each 20 acre tract contained in the land sought to be located; that each 20 acre tract therein contained should have been marked upon the surface thereof, so that the boundaries thereof could have been readily traced; that a separate location of each 20 acre tract was necessary under the law; and that work or improvements of the value of $100 should have been done on each 20 acre tract contained therein, for the year 1891. Section 2330 of the Revised Statutes of the United States, among other things, provides: "But no location of a placer claim made after the ninth day of July, 1870,

shall exceed 160 acres for any one person or association of
persons." This statute, it seems to us, confers the right upon
an association of not less than eight persons to locate not to
exceed 160 acres in one claim. This has been the holding
and ruling of the United States land department uniformly,
as far as we have been able to discover; and patents have uni-
formly issued in such cases, when there was a showing of an
expenditure of $500 in work or improvements upon any part
of the 160 acre claim. (See *Good Return Min. Co.*, 4 Dec.
Dep. Int., 221; also, Morrison's Mining Rights, 7th ed.,
134.) In *St. Louis Smelting Co.* v. *Kemp*, 104 U. S. 636,
Mr. Justice Field, delivering the opinion of the court, says:
"The last position of the court below—that the owner of con-
tiguous locations, who seeks a patent, must present a separate
application for each, and obtain a separate survey, and prove
that upon each the required work has been performed—is as
untenable as the rulings already considered"; and in the same
case it is said: "It would be absurd to require a shaft to be
sunk on each location in a consolidated claim, when one shaft
would suffice for all the locations." In this case just cited,
Mr. Justice Field is speaking of the things necessary to be
done by an applicant to obtain a patent to placer mining
ground. In no case, nor in any ruling or decision of the
United States land department, that we have been able to find,
is it held to be necessary that a separate discovery, separate
marking of the boundaries, separate recording, and separate
work should be made and performed upon each 20 acres con-
tained in a 160 acre placer claim authorized to be located under
one location by an association of persons. If the plaintiffs in
this suit had made such a discovery on the ground in contro-
versy, and had made such a location thereof, and were per-
forming such work, and making such improvements thereon,
as would entitle them to a patent therefor under the mining
laws of the United States, then they had such title and right
to possession as would entitle them to prosecute this action for
damages for the trespass complained of.

The appellant further contends that the evidence shows that
the plaintiffs had forfeited any right or title they may have
had to the ground in controversy, by failing to do the required

amount of work thereon for the year 1891. The evidence in this case shows, that work of the value of about $150 was done for that year upon the entire claim. If, under the decisions of the land department, and the tendency of the adjudications of the courts, $500 in work and improvements on any part of a 160 acre claim, or any one of a number of contiguous claims, is sufficient to entitle applicants to a patent for the whole of such ground or claims, then, by parity of reason, it would seem that $100 in work or improvements expended or made upon such 160 acre claim in any one year would save it from forfeiture. Such seems to be the view taken by the land offices, and is in accordance with the customs, rules, and regulations of miners in this jurisdiction. But in this case a forfeiture was not pleaded by appellant in its answer, although the court below permitted evidence of the amount of work done on said claim for the year 1891. There is no evidence of a re-entry or relocation by any one on account of failure to to do the required work by plaintiffs on said ground; nor does the defendant connect itself with any outstanding title adverse to plaintiff, or plead any license or warrant to enter upon the ground in controversy. We do not find any thing in the record to support the plea of forfeiture.

The appellant contends that in this case, if it were liable for actual damages, the court below erred in rendering judgment for treble damages. This suit was instituted for damages for willful and malicious trespass; but respondents contend that, notwithstanding the complaint charges willful and malicious trespass, they are nevertheless entitled to treble damages, under section 363, Code of Civil Procedure. The respondents contend that it was not necessary, under said section, to allege or prove malice, wantonness, or evil design, etc.

In Endlich on the Interpretation of Statutes, section 129, the author, commenting on similar statutes, says: "Similarly, statutes giving punitive, double, or treble damages against one cutting and converting to his own use timber growing on the land of another, without the latter's consent, are held confined to cases where some element of willfulness, wantonness, carelessness, or evil design enters into the act."

In *Cohn* v. *Neeves*, 40 Wis. 393, the court, in a case involv-

ing the construction of a statute similar to the one under consideration here, says: "The important question arising upon the various exceptions taken by defendants is: Does the statute give the treble damages when the conversion is merely a technical conversion in law, as in the case before us, or was it only intended to apply to cases where some ingredient of willfulness, wantonness, or evil design enters into the act? According to the view of the circuit judge, the statute applies to every case of the conversion of logs, timber, or lumber floating in any of the waters of this state, or lying on the banks or shores of such waters, or on any island where the same may have drifted, and gives treble damages as the measure of recovery. It seems to us that this is an unreasonable and unsound construction of the provision. True, the language used is general, and, if literally interpreted, would include any conversion. But, says an acknowledged authority on this subject, in interpreting a statute it is not always a safe rule, or a true line of construction, to decide according to the strict letter of the act, but courts will rather consider what is its fair meaning, and will expound it differently from the letter, in order to preserve the intent. *Qui hæret in litera, hæret in cortice.* (Broom's Legal Maxims, page 536.) Observing this rule of interpretation, looking at the object and purpose of the statute, we cannot think it was intended to apply to every conversion of this kind of property, situated or found as described, without regard to the question whether the conversion was wanton and willful or not. It is needless to observe that the law is highly penal in its character. By way of punishment it subjects the wrongdoer, in certain cases, to an extraordinary liability for the property of another appropriated to his use. In some cases the conversion may be merely a technical one in law, arising from accident, mistake, or even carelessness, without any evil design, and where the damages recoverable at common law afford an adequate compensation to the party injured." The same conclusion is arrived at, and the same construction placed upon a similar statute, in *Wallace* v. *Finch*, 24 Mich. 256.

In *Kramer* v. *Goodlander*, 98 Pa. St. 353, construing a statute almost identical with ours, the court say: "Its [the

statute's] object is the prevention of willful or careless cutting of another's timber, by at once punishing the wrongdoer, and amply compensating the owner."

In the case at bar the evidence shows that the land in controversy was located out in the wilderness, far away from human habitation. The plaintiffs had to cut a trail through the timber to get to it. The defendant, coming to the land from another direction, had to cut a trail also. The defendant found but little evidence that any of the land in the vicinity had ever been claimed by any person for any purpose, except the blazing of four or five trees, and a small discovery shaft on the ground in controversy, as the work of plaintiffs. There was nothing to indicate that anybody actually asserted ownership or dominion over any part of the country thereabout. The circumstances attending the trespass complained of here are vastly different from a case where a person cuts down a shade tree in front of another's house or lot, or enters another's close and damages trees or timber therein, when all the evidences of ownership in another are present. These are the acts and trespasses we think are intended to be denounced and punished by our statute. The evidence in the case does not support the contention that there was any willfulness, wantonness, or maliciousness in the acts or conduct of the defendant. We therefore think that the evidence did not justify the rendering of judgment for treble damages against defendant in this case.

It is ordered that the judgment of the court below be modified, by rendering judgment in favor of plaintiffs against the defendant, for the amount of actual damages found by the jury, and in other respects the judgment is affirmed as modified.

*Modified and affirmed.*

HARWOOD, J., concurs.